IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DAVID DENT and SARA DENT,
husband and wife,

    Plaintiffs,

v.                                      Civil Action No. 5:12CV53
                                                   (STAMP)

CHESAPEAKE APPALACHIA, LLC,
a foreign corporation,
ROBERT J. DOBKIN,
an individual,
TRUMBULL CORPORATION,
a foreign corporation
and JOHN DOES 1-5,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO REMAND AND
DENYING MOTION TO DISMISS WITHOUT PREJUDICE**

I.  Procedural History

The plaintiffs, both residents of Ohio County, West Virginia, filed this civil action in the Circuit Court of Ohio County, West Virginia, claiming that the named defendants were all liable to them for damage to the plaintiffs' property resulting from natural gas drilling and drilling-related activities performed on a neighbor's property. The defendants filed a timely notice of removal and removed this civil action to this Court on the basis of diversity jurisdiction pursuant to 29 U.S.C. §§ 1332(a) and 1441(a).

In support of their claim of diversity jurisdiction, the defendants assert that the amount in controversy of $75,000.00, exclusive of interest and costs is satisfied, and that complete

diversity exists.  The defendants acknowledge that defendant Robert J. Dobkin ("Dobkin") is a West Virginia resident and thus not diverse to the plaintiffs, but argue that this Court should disregard his citizenship for jurisdictional purposes on the basis of fraudulent joinder.

In response, the plaintiffs filed a motion to remand, wherein they ask this Court to remand this civil action to the Circuit Court of Ohio County, both because defendant Dobkin is not fraudulently joined, and because the defendants have failed to show that the amount in controversy has been satisfied.  Defendant Trumbull Corporation ("Trumbull") also filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Both of these motions are now fully briefed and ripe for disposition by this Court.  For the reasons that follow, this Court will grant the plaintiffs' motion to remand and, finding that this Court lacks jurisdiction over the merits of this civil action, will deny without prejudice defendant Trumbull's motion to dismiss.

## II. Facts[1]

On October 1, 2010, defendant Chesapeake Appalachia, LLC ("Chesapeake") entered into an oil and gas drilling, production, and removal lease agreement with Dale and Agnes Hall, owners of approximately 329.159 acres of land located in close proximity to the plaintiffs' property ("Hall property").  Specifically, the

---

[1] For the purposes of this opinion, this Court adopts, for the most part, the facts as set forth by the plaintiffs in their complaint.

2

plaintiffs' property is located directly across GC&P Road from the Hall property. As a result of the Halls' grant of the lease to Chesapeake, defendants, according to plaintiffs, constructed gas well drilling sites on the Hall property, which process involved the construction of an access road from GC&P Road, as well as drilling pads and drilling wells. The plaintiffs further claim that the defendants applied a gas extraction method known as hydraulic fracturing or "fracking" on the Hall property in connection with the gas well drilling sites and the extraction of gas.

The plaintiffs allege that all of these actions related to the gas drilling activities on the Hall property have damaged the plaintiffs' adjacent property. The plaintiffs raise state law claims of negligence, private nuisance, trespass, the tort of outrage, and invasion of privacy against the defendants. The plaintiffs request damages for property damages, personal injuries, mental and emotional damages, as well as punitive damages.

### III. Applicable Law

#### A. Motion to remand

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. 28 U.S.C. § 1441. Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331 and (2) those involving citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interests

and costs pursuant to 28 U.S.C. § 1332(a). The party seeking removal bears the burden of establishing federal jurisdiction. See Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). Removal jurisdiction is strictly construed due to "significant federalism concerns," implicated by abrogating a state court of the ability to decide a case over which it has jurisdiction. Id. Thus, if federal jurisdiction is doubtful, the federal court must remand. Id.

However, when a defendant removes a case that, on its face, does not present complete diversity, courts are permitted to utilize the doctrine of fraudulent joinder to examine the record in more depth to determine whether the non-diverse parties are real parties in interest to the action. Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). Under the doctrine of fraudulent joinder, a defendant may remove a case on the basis of diversity jurisdiction even if a non-diverse defendant is a party to the case, so long as the removing party can prove that the non-diverse defendant was fraudulently joined to the action. Id. Fraudulent joinder "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Id.

Further, with regard to the amount in controversy, although courts strictly construe the statute granting removal jurisdiction, Doe v. Allied Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993), the

4

court is not required "to leave common sense behind" when determining the amount in controversy. Mullins v. Harry's Mobile Homes, 861 F. Supp. 22, 24 (S.D. W. Va. 1994). When the amount in controversy is not apparent on the face of the plaintiff's complaint, the federal court must attempt to ascertain the amount in controversy by considering the plaintiff's cause of action as alleged in the complaint and any amendments thereto, the notice of removal filed with a federal court, and other relevant materials in the record. 14C Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 3725 at 73 (3d ed. 1998). However, the court is limited to examining only evidence that was available at the moment the petition for removal was filed. Chase v. Shop 'N Save Warehouse Foods, 110 F.3d 424, 428 (7th Cir. 1997).

IV. Discussion

A. Motion to remand

1. Fraudulent joinder

In their notice of removal, the defendants argue that this Court has jurisdiction over this case because defendant Dobkin, who along with the plaintiffs is a resident of West Virginia, was fraudulently joined in this action. To establish fraudulent joinder, "the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir.

1999) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)) (emphasis in original).  A claim of fraudulent joinder places a heavy burden on the defendants.  Marshall, 6 F.3d at 232.  "[T]he defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor.  A claim need not ultimately succeed to defeat removal; only a possibility of right to relief need be asserted."  Id. at 232-33 (internal citations omitted).  Further, the burden is on the defendants to establish fraudulent joinder by clear and convincing evidence.  Rinehart v. Consolidated Coal Co., 660 F. Supp. 1140, 1141 (N.D. W. Va. 1987).

Here, the defendants do not allege outright fraud in the plaintiffs' pleadings.  The defendants rather argue that the plaintiffs do not, and cannot, assert a claim against Mr. Dobkin.  Therefore, to defeat the plaintiffs' motion to remand, the defendants must establish by clear and convincing evidence that, even resolving all issues of fact and law in the plaintiffs' favor, the plaintiffs have not alleged any possible claim against defendant Dobkin.  The defendants have failed to meet this burden.

In support of their notice of removal and in opposition to the plaintiffs' motion to remand, the defendants argue that the plaintiffs have failed to assert any causes of action "specifically and solely, against Mr. Dobkin," but rather have only alleged claims against the defendants "generally."  ECF No. 1 *6 (emphasis

in original).  The defendants also assert that the plaintiffs have sued defendant Dobkin in his capacity as a field representative for defendant Chesapeake, and "'an employee and/or agent and/or apparent agent of Defendant Chesapeake,' and not in his individual capacity."  Id. at *7.  Accordingly, defendants maintain, defendant Chesapeake would be liable for all of his conduct through respondeat superior.  This Court finds the defendants' arguments in this regard to be without merit.

The defendants' central argument for the fraudulent joinder of defendant Dobkin focuses on their assertion that the plaintiffs have failed, within the five counts of the complaint which assert causes of action,[2] to assert any claims against defendant Dobkin "solely and/or individually."  ECF No. 16 *6.  The defendants argue that each of these counts are simply directed at the defendants generally.  The defendants admit that defendant Dobkin is individually named in what they term the "introductory paragraphs" which include Count I, but argue that no individual allegations are made against him in any of the causes of action.  This Court finds that this argument ignores the plain language of the complaint.

Count I, which presents background of the tortious conduct alleged against the defendants, raises a number of individual allegations against defendant Dobkin.  Specifically, Count I

---

[2]Count I serves as an introductory paragraph, and asserts the plaintiffs' allegations of tortious conduct on the part of the defendants, Count II asserts the plaintiffs' demand for punitive damages, Counts III-VII assert the plaintiffs' causes of action.

7

alleges that defendant Dobkin made a number of representations to the plaintiffs regarding remediation of complaints that the plaintiffs had about alleged damage to their property. Further, the plaintiffs specifically allege that defendant Dobkin individually committed trespass by driving vehicles and/or heavy equipment onto the plaintiffs' property. All of these factual allegations are then explicitly included by reference into Counts III-VII.[3] This Court makes specific note that Count V is a claim for trespass. It is clear from the allegations in Count I which are summarized above that, at the very least, the plaintiffs have alleged a trespass claim against defendant Dobkin specifically and individually. Accordingly, the defendants' claim that no individual allegations have been made against defendant Dobkin is without merit.

This Court finds it necessary to take note of the central case utilized by the defendants in support of their arguments in this regard, Kahle v. Chesapeake Energy Corp., No. 5:11cv24, 2011 U.S. Dist. LEXIS 59974 (N.D. W. Va. June 3, 2011). In that case, this Court found that the individual defendant, also a field representative for Chesapeake, was fraudulently joined to a civil action seeking a declaratory judgment regarding the validity of the assignment of the plaintiffs' oil and gas lease. Id. at *1-*2. This Court concluded that the individual defendant in that case had

---

[3]Counts II-VII all begin with a paragraph specifically incorporating all preceding paragraphs in the complaint "as if fully restated." ECF No. 1 Ex. 1.

been fraudulently joined, because "there [were] no claims asserted against [the individual defendant] and no relief sought from him." Id. at 13. Further, this Court did note in that case the plaintiffs' assertions that their complaint could be construed as alleging claims for negligence and trespass. However, this Court rejected the plaintiffs' arguments in this regard because no claim was made that the individual defendant ever entered their property until it was raised in the plaintiffs' motion to remand. Id. at *13-*14.

Initially, it is clear that the Kahle case is quite factually dissimilar to this case. The plaintiffs were seeking declaratory judgment regarding the legitimacy of a contractual agreement to which the individual defendant was not a party. In the instant case, no contractual relationship is alleged with any of the defendants. Rather, this case is rooted entirely in tort. Further, as the plaintiffs argue, and as is noted above, this Court made clear in its opinion that no claims for trespass or negligence had been alleged against the individual defendant in the complaint, and thus could not be considered. This is obviously not the case here, as the plaintiffs have alleged specific conduct and causes of action for both negligence and trespass, among other claims, against defendant Dobkin. Accordingly, the defendants' reliance upon Kahle is misplaced.

The defendants also argue that, even if tortious conduct has been adequately alleged against defendant Dobkin, he cannot be held

personally liable for that conduct. The defendants support this argument with the plaintiffs' assertion that at all times relevant, defendant Dobkin was acting as a "field representative" and employee of defendant Chesapeake, and the plaintiffs' allegation that as a result of this, Chesapeake can be held liable for his conduct through the doctrine of <u>respondeat superior</u>. As such, they argue, any liability for the conduct of defendant Dobkin lies solely with Chesapeake. This Court finds this argument to be improper. The plaintiffs clearly name defendant Dobkin, "an individual" as a defendant to this civil action in the caption of the case. There is no indication anywhere in the plaintiffs' complaint that they intend to join defendant Dobkin solely in his capacity as an agent of Chesapeake, or as simply doing the work of Chesapeake.

Further, beyond the initial naming of defendant Dobkin as an individual defendant to this civil action, throughout the complaint the plaintiffs name a number of alleged individual and independent conduct of defendant Dobkin which they allege to be tortious in nature. Notably, the plaintiffs specifically name defendant Dobkin individually as having "unlawfully and improperly driven" on the plaintiffs' property, causing damage to the property. While this Court recognizes that the plaintiffs assert in their complaint that Chesapeake could be liable for defendant Dobkin's conduct asserted in the complaint, this in no way indicates that defendant Dobkin cannot also be held personally liable for the conduct alleged.

As the defendants admit, "agency law does not insulate an agent from liability for his or her torts because an agent's tort liability is not based upon the contractual relationship between principal and agent, but upon the common-law obligation that every person must so act or use that which he or she controls as not to injure another." 3 Am. Jur. 2d Agency § 298. Further, "[a]n agent is not relieved from liability merely because he or she acted at the request, command, or directions of the principal." Id. "Thus, an agent may be held liable for his or her own . . . trespass." Id. (emphasis added).

Additionally, Negri v. Nationwide Mut. Ins. Co., No. 5:11cv3, 2011 U.S. Dist. LEXIS 92430 (N.D. W. Va. Aug. 18, 2011), the case cited by the defendants to support this assertion, is likewise not persuasive. Initially, it is important to note that in Negri, the plaintiffs largely asserted claims directly related to the contractual relationship between the plaintiffs and the individual defendants, the plaintiffs' insurance agent, employer. The only claims upon which this Court found that liability could possibly be found for the individual defendant was in the plaintiffs' claims for negligence and the tort of outrage. However, this Court ultimately determined that the plaintiffs had failed to allege any independent conduct of the individual defendant with regard to any of these claims, but rather simply asserted that the individual defendant owed the plaintiffs a duty to "reasonably, fairly, in good faith, and/or in accordance with the law [to] provide the

11

plaintiff with insurance coverage." Id. at *12.  Further, the only tortious behavior alleged against the individual defendant was the general negligent conduct alleged against all of the defendants: failing to provide the plaintiffs with insurance coverage.  Id. Based upon the generality of the plaintiffs' allegations in that case, and the fact that no independent conduct of the individual defendant had been alleged beyond the general allegations of tortious denial of insurance coverage alleged against both the Nationwide and the individual defendant, this Court found fraudulent joinder.  Id. at *12-*13.

This is not the case in this civil action.  In the plaintiffs' complaint, defendant Dobkin is alleged to have committed a number of individual tortious acts outside of the general tortious acts alleged against his employer, Chesapeake.  As noted above, defendant Dobkin is alleged to have made individual trespasses on the plaintiffs' property.  He is also alleged to have made a number of promises to the plaintiffs which they allege to have been fraudulent or false.  As such, this Court's conclusions in Negri do not lend themselves to a similar conclusion here.  The facts of this case are more similarly aligned with a West Virginia Supreme Court of Appeals case cited in and distinguished by Negri, entitled Jarvis v. Modern Woodmen of America, 406 S.E.2d 736 (W. Va. 1991). In that case, the Supreme Court of Appeals found that an insurance agent could be found liable in his own right based upon allegations that he falsified the plaintiff's deceased husband's insurance

12

application by omitting the fact that the plaintiff's husband was a smoker.  Id. at 740.

Like in the plaintiffs' complaint here, the individual defendant was alleged to have engaged in the conduct in the course of his employment with the plaintiff's insurer, but because the conduct alleged was his own, rather than simply general behavior of the "defendants" in the course of denying benefits, the Court allowed the case to continue against that defendant.  Id. at 743.  The Court stated, "[a]n agent or employee can be held personally liable for his own torts . . . and this personal liability is independent of his agency or employee relationship.  If he is acting within the scope of employment, then his principle or employer may also be held liable."  Id.  For the same reasons, this Court finds that a possible individual claim has been alleged against defendant Dobkin, and he is not protected from liability by respondeat superior.  Accordingly, defendant Dobkin has not been fraudulently joined to this civil action.

    2.   Amount in controversy

Further, this Court finds that even if defendant Dobkin had been fraudulently joined to this civil action and his citizenship was disregarded for jurisdictional purposes, this Court would nonetheless lack subject matter jurisdiction over this case.  The defendants have failed to satisfy their burden of showing that the jurisdictional amount of $75,000.00 is in controversy.  The burden of establishing that the amount in controversy exceeds $75,000.00,

exclusive of interests and costs, rests with the party seeking removal. Mulcahey, 29 F.3d at 151. This Court has consistently applied the "preponderance of evidence" standard to determine whether a defendant has met its burden of proving the amount in controversy. When no specific amount of damages is set forth in the complaint, the defendant bears the burden of proving that the claim meets the requisite jurisdictional amount. Mullins, 861 F. Supp. at 23. In such circumstances, the Court may consider the entire record before it and may conduct its own independent inquiry to determine whether the amount in controversy satisfies the jurisdictional minimum. Id.

The defendants assert that they have met their burden of proving that the requisite amount in controversy exists in this case because the plaintiffs' complaint sets forth a significant number of past, present, and future injuries and damages sought–fourteen to be exact–and also because punitive damages are sought. ECF No. 16 *10. The defendants also to point the plaintiffs' assertions that the defendants' conduct has caused cracks in the walls and foundation of their home, as well as damage to the plaintiffs' asphalt driveway. Finally, the defendants note that the plaintiffs seek compensation for damage to their grass, landscaping, vehicles, furniture, trees and vegetation. The defendants argue that all of these allegations of damages "unequivocally exceed $75,000, exclusive of interests and costs." Id. at *11.

14

The plaintiffs maintain that, in order for the defendants to satisfy their burden of proving that the amount in controversy exceeds $75,000.00, they must present evidence which establishes the same. They also note that this Court has found that speculation regarding the amount in controversy is insufficient to avoid remand. See McWha v. Otway, 5:06cv164, 2007 U.S. Dist. LEXIS 60246 (N.D. W. Va. Aug. 15, 2007). The plaintiffs further point to a letter sent from defendant Chesapeake to the plaintiffs on June 6, 2011, offering them $500.00 to settle claims of damage to their property at that time, as well as a settlement demand letter sent by the plaintiffs to the defendants following removal which offers to settle this civil action for $74,999.00. The plaintiffs assert that, for all of these reasons, the defendants have failed to meet their burden of showing that the jurisdictional minimum amount in controversy is satisfied in this case.

After review of the pleadings, as well as the entire record in this case, this Court agrees with the plaintiffs that the defendants have failed to satisfy their burden in this regard. As the plaintiffs note, in cases where the complaint does not set forth any specific amount of damages sought, as is the case here, the defendants must present actual evidence that the amount in controversy is exceeded; simple conjecture will not suffice. See Bartnikowski v. NVR, Inc., 307 F. App'x 730, 737 (4th Cir. 2009) (unpublished) (Finding that amount in controversy not shown when defendant "has put forth no evidence of its own to support [the

15

claimed amount in controversy, but] rather, has only presented a conjectural argument."). The defendants have failed to present any such evidence. In the notice of removal and the defendants' response to the plaintiffs' motion for remand, the defendants simply restate the damages claimed by the plaintiffs, and make conclusory assertions that, based upon these claims, the amount in controversy must be more than $75,000.00. However, the defendants have provided this Court with no evidence to support these conclusions, and this Court can find nothing in the record through an independent investigation which could inform the Court as to the amount in controversy in this case.

The defendants argue that this Court should disregard both the plaintiffs' demand letter, because it was sent following removal, and defendant Chesapeake's 2011 offer, because it was only intended to settle damages to landscaping which the plaintiffs claimed at that time. This Court does not find either of these documents to be dispositive of the amount in controversy in this case, but it is important to note that, even if the $500.00 settlement offer sent to plaintiffs by defendant Dobkin on behalf of defendant Chesapeake only represented a portion of the damages now sought, it does provide evidence of the defendants' valuation of at least that portion of the plaintiffs' claim, and that they do not find it to be worth anywhere near $75,000.00. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1097 (11th Cir. 1994) (Although settlement offers are

not determinative of the amount in controversy, they do "count for something.")

Further, regardless of how this Court considers or chooses not to consider either of these documents, the ultimate conclusion remains the same. Both the offer and demand letter cut against the defendants' assertion that the amount in controversy is met here but, because this Court finds that the defendants simply have not presented evidence to support that argument, evidence to refute the same is unnecessary. Bartnikowski, 307 F. App'x at 737 ("Plaintiffs have no burden in these circumstances and are under no obligation to put forth any evidence."). Accordingly, with or without the settlement offer and demand letter, the defendants have failed to meet their burden and this matter must thus be remanded to the Circuit Court of Ohio County.

B.  Motion to dismiss

Based upon the foregoing, this Court determines that it lacks subject matter jurisdiction to address the merits of the plaintiffs' claims raised herein. Accordingly, it is without jurisdiction to decide the pending motion to dismiss. Defendant Trumbull's motion to dismiss is thus denied without prejudice subject to refiling in state court if appropriate to do so.

V.  Conclusion

For the reasons stated above, the plaintiffs' motion to remand is GRANTED. Defendant Trumbull Corporation's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is DENIED

WITHOUT PREJUDICE. Accordingly, this matter is hereby REMANDED to the Circuit Court of Ohio County, West Virginia.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein and to the Clerk of the Circuit Court of Ohio County, West Virginia. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED: February 5, 2013

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE